IN RE APPEAL OF CHARLES HAHN.

CHARLES HAHN, Appellee, v. CITY OF LE MARS, Appellant.

MUNICIPAL CORPORATIONS: Public Improvements—Assessments for Benefits. Reduction of 40 per cent in a sewer assessment held equitable, under a record showing that plaintiff's farm land had been assessed as though divided into city lots, although the prospect that it would ever be so platted was very remote, and the sewer as located was of no immediate practical benefit to him.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 12, 1924.

APPEAL from special assessment for benefits by the establishment of a sewer in the city of LeMars. The trial court reduced the taxpayer's assessment forty per cent, and the city appeals.—*Affirmed.*

*Nelson Miller* and *Herbert S. Martin,* for appellant.

*Roseberry & Roseberry,* for appellee.

FAVILLE, J.—Appellee is the owner of a farm of approximately sixty-six acres, all except a half acre of which lies within the boundaries of the city of LeMars. The land is located in the western part of the city. Cedar Street extends north and south, and appellee's property abuts upon this street for a distance of 1,132 feet. The sewer in question is constructed in the center of Cedar Street opposite appellee's land for a distance of

990 feet. There are no streets or alleys located upon appellee's land. The residence and farm buildings are at the west end of the tract, and 1,280 feet from the west line of Cedar Street. Appellee occupies the tract of land as a home, and farms the same. The method adopted by the officials of computing the assessment for the establishment of the sewer was to ascertain the total number of lots that were or could be created out of lands abutting upon the improvement. In order to accomplish this, it was necessary to assume that a street called Howard Street, that runs north and south and that terminates at Broadway Street, running east and west some distance north of appellee's land, had been extended through appellee's land parallel to Cedar Street. The tract thus supposedly segregated would leave 8.315 acres of appellee's farm lying between Howard Street, if the same had been so extended, and Cedar Street. The engineer divided this portion of land for assessment purposes into two regular tiers of lots, each .60x150 feet, making allowance for future streets and alleys. In other words, he proceeded to make a hypothetical platting of the east end of appellee's farm, and then assessed the assumed lots abutting upon Cedar Street at $51.32 for each lot, and the remaining assumed lots at $9.57 for each lot. A similar rate of assessment was adopted with regard to the lots in the city that had been platted and laid out and that were subject to assessment, although this rule did not obtain as to all of the lots assessed, e. g.: the larger portion of a college campus of about six acres was assessed $281.84. Under this plan the east end of appellee's farm, lying next to Cedar Street, was assumed to be divided into lots, and these "lots" were then assessed on the same basis as lots lying immediately east of Main Street of the city, a paved and much used thoroughfare. It also appears in the evidence that a number of other lots of greater dimensions than the "lots" created by the assumed platting of the engineer were assessed on the same basis of $51.32 for each lot.

It is unnecessary that we go into the details of the evidence; but it is shown that in the last twenty years the growth of the city of LeMars has averaged twenty-seven a year; and the evidence also strongly tends to show that there are unoccupied lots within the platted portion of said city that are available for

residence and business purposes, so that, in all probability, the demand for the platting and selling of any portion of appellee's tract for said purposes is quite remote. The sewer as located is of no immediate practical benefit to appellee: that is to say, it cannot be used by him in connection with any portion of his farm until buildings are built, if ever, upon the east end thereof, adjacent to Cedar Street.

In cases of this kind, the assessment of costs requires that the burden shall be distributed ratably and proportionately upon the property subject to assessment. *Early v. City of Fort Dodge,* 136 Iowa 187. The assessment as made by the city council is presumed to be legal, equitable, and just. *Jones v. City of Sheldon,* 172 Iowa 406; *Dickinson v. Incorporated Town of Guthrie Center,* 185 Iowa 541; *Illinois C. R. Co. v. Incorporated Town of Pomeroy,* 196 Iowa 504; *Chicago, R. I. & P. R. Co. v. City of Centerville,* 172 Iowa 444.

It may be conceded that the amount of assessment for benefits by the construction of such a municipal improvement is not necessarily limited by the present use which the owner makes of the property. Future prospects and reasonable anticipations may properly be considered. *Chicago, R. I. & P. R. Co. v. City of Centerville,* supra; *Chicago & N. W. R. Co. v. Board of Supervisors,* 182 Iowa 60; *Des Moines City R. Co. v. City of Des Moines,* 183 Iowa 1261.

The property of appellee, under the facts of this case, was subject to a reasonable assessment for benefits. The exact amount that should be assessed under such circumstances as are disclosed by this record is not easy of determination. At best, it can be only an approximation. There is no fixed standard or yardstick available.

We have examined the record with care, and are satisfied therefrom that the original assessment as made by the city council against the property of appellee was excessive, and should be reduced. We are also satisfied that the amount of reduction of 40 per cent, as made by the trial court, is as nearly accurate and equitable as we could arrive at under the record in this case, and we are disposed to acquiesce therein. See *Smith v. City of Marshalltown,* 197 Iowa 85.

Appellant contends that the objections of appellee were not

sufficient. It is true that they were somewhat informal, but we regard them as sufficient to challenge the correctness of the assessment against appellee's property before the city council and to furnish the basis of appellate review.

The decree of the trial court meets with our approval, and it is—*Affirmed.*

Arthur, C. J., Evans and Preston, JJ., concur.